IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-23-344 |
| | | Civil Action No. RDB-25-2198 |
| AHMED M. SARY, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Petitioner Ahmed M. Sary is serving an eighty-four-month sentence after pleading guilty on October 18, 2023, to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 and § 1349.[1] (ECF No. 111 at 1.) In its Sentencing Memorandum, the Government sought a sentence of 114 months, or nine years and six months, followed by three years of supervised release, as well as restitution of $17,901,279.87. (ECF No. 76 at 1.) The parties later stipulated to a sentence between sixty months, or five years, and 114 months, or nine years and six months. (ECF No. 66 at 6.)

On June 25, 2024, this Court sentenced Sary to eighty-four months' imprisonment, followed by three years of supervised release. (ECF No. 111 at 1.) Additionally, based on his commission of Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDL") loan fraud (ECF No. 76 at 1), Mr. Sary was ordered to pay $17,901,279.87 in restitution. (ECF No. 111 at 1–2.) Mr. Sary did not file a direct appeal. (*Id.*)

---

[1] Unless otherwise noted, all docket references are to Mr. Sary's criminal case, RDB-23-344.

1

Presently pending before this Court is Mr. Sary's pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 111), in which he raises several arguments to vacate or correct his sentence.[2] The Court has reviewed the parties' submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, Mr. Sary's § 2255 Motion (ECF No. 111) is DENIED.

## BACKGROUND

### I. Factual History

From April of 2020 through January of 2022 in the District of Maryland, Mr. Sary, his co-conspirator, H.D., and others engaged in a scheme to defraud the United States Small Business Administration ("SBA"), Cross River Bank, and other SBA-approved lenders to collect several fraudulent PPP and EIDL loans. (ECF 66-1 at 1.) The Paycheck Protection Program was a COVID-19 pandemic relief program whereby third-party lenders could approve and disburse SBA-backed loans to qualifying businesses to cover bills incurred resulting from COVID-19. (ECF No. 60 at 2.) The Economic Injury Disaster Loans program was a low-interest financing option for small businesses, renters, and homeowners in regions affected by declared disasters, such as COVID-19. (*Id.* at 3.) Mr. Sary perpetrated his fraud in two ways. By one method, he used his purported financial services business, Amex Financial Group, to prepare numerous fraudulent PPP and EIDL loan applications, claiming that the loans would benefit businesses[3] affected by the COVID-19 pandemic. (*Id.* at 4.) The real

---

[2] Mr. Sary has also filed a Motion to Compel Ruling on Compassionate Release (ECF No. 112) in reference to his pro se Motion for Compassionate Release (ECF No. 98 *SEALED*.) The Court will address both of those Motions separately.

[3] These businesses appear to have been a mix of legitimate and illegitimate businesses. As noted below, for the legitimate businesses, Mr. Sary's fraudulent loan applications included

purpose of the loan applications was to obtain the money for himself. (*Id.*) The second way that Mr. Sary perpetrated his fraud was by helping owners of other businesses apply for and secure their own PPP and EIDL loans. (*Id.*) When these loans were paid out, Mr. Sary received kickback payments from the persons whom he helped make the applications. (*Id.*) The basic scheme of the fraud was that Mr. Sary and his co-conspirators would grossly inflate, among other things, the number of employees, monthly payroll costs, and revenue of the businesses. (ECF 66-1 at 1.) They also included in the applications false Internal Revenue Service tax forms and bank statements. (*Id.*)

Overall, Mr. Sary disbursed to the owners of the businesses at least $14,807,609.37 in PPP funds in connection with over eighty-five fraudulent PPP loans. (ECF No. 60 at 4.) He also disbursed more than $3,093,670.50 in EIDL funds in connection with fifty-seven fraudulent EIDL applications. (*Id.*) In total, Mr. Sary applied for and caused these businesses to receive a total of $17,901,279.87 in fraudulently acquired money. (ECF No. 76 at 2.) He personally received $959,559.00 for the businesses he claimed to have owned. (*Id.*) His financial services business, Amex Financial Group, also received more than $1,000,000.00 in payments from banks in exchange for its role in the loan applications. (*Id.*)

Additionally, in exchange for submitting the fraudulent PPP and EIDL loan applications on behalf of other co-conspirators, Mr. Sary received kickback payments totaling $2,714,217.22.[4] (ECF No. 60 at 7.) He used those kickbacks to fund multiple trips to Dubai

---

inflated claims about number of employees, revenue, and costs. As for the illegitimate businesses, which appear not to have existed in any real capacity except to perpetrate the loan fraud, Mr. Sary made up all the facts in the loan applications.

[4] As a kickback, Mr. Sary received twenty to thirty percent of each loan disbursement he helped others to secure.

and Egypt, during which he stayed in luxury hotels. (*Id.*) He also used some of the funds to purchase property in Egypt. (*Id.*)

## II. Procedural History

On April 29, 2022, federal law enforcement arrested Mr. Sary and executed search warrants at his office, an apartment adjoining the office, and his residence. (ECF No. 188 at 10.) Evidence related to the PPP and EIDL loan applications for various different entities were collected from his office and the adjoining apartment. (*Id.*) On September 26, 2023, the Government filed a one-count Information against Mr. Sary, charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (ECF No. 60.) Mr. Sary entered into a plea agreement with the Government on September 25, 2023. (ECF No. 66.) On October 18, 2023, Mr. Sary pleaded guilty to Count One of the Information. (ECF No. 65 *SEALED*.)

Prior to sentencing, the Presentence Report calculated Mr. Sary's offense level to be a 33, but the Government suggested that due to the facts and circumstances of the case, Mr. Sary's offense level should be properly calculated as a 31. (ECF No. 76 at 6.) The Government sought a sentence of 114 months, or nine years and six months, followed by three years of supervised release, as well as restitution of $17,901,279.87 for the fraudulent loan disbursements. (*Id.* at 1.) The parties later stipulated to a sentence between sixty months, or five years, and 114 months, or nine years and six months. (ECF No. 66 at 6.)

This Court held a sentencing hearing on June 25, 2024. (ECF No. 118 at 12.) The Court confirmed that a proper proceeding under Federal Rule of Criminal Procedure 11 took place, where Mr. Sary knowingly and voluntarily pleaded guilty and was informed of the sentencing guidelines. (*Id.* at 11–12.) The Court heard arguments from both parties on the length of the

sentence to be imposed and the Court imposed a sentence of eighty-four months' imprisonment, followed by three years of supervised release. (ECF No. 118 at 11–12.) Based on his commission of PPP and EIDL fraud, Mr. Sary was also ordered to pay $17,901,279.87 in restitution. (ECF No. 76 at 1; ECF No. 111 at 1–2.) Mr. Sary did not file a direct appeal.[5] (ECF No. 118 at 12.)

On July 3, 2024, Mr. Sary filed the pending Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (ECF No. 111.) He alleges three grounds for relief: (1) ineffective assistance of counsel; (2) violation of due process rights; and (3) improper restitution. *See generally* (ECF No. 111). This matter is ripe for review.

## STANDARD OF REVIEW

Mr. Sary's pro se § 2255 Motion is "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Under 28 U.S.C. § 2255, a prisoner may seek federal habeas corpus relief to vacate, set aside, or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Federal habeas relief is "an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and therefore, "an error of law does not provide a basis for collateral attack unless the claimed

---

[5] The Court notes that Mr. Sary's plea agreement included a waiver of all rights to appeal. (ECF No. 66 at 3–4.)

error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"[I]t is well settled that [a petitioner] cannot 'circumvent a proper ruling on . . . direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). A petitioner may not "recast, under the guise of collateral attack, questions fully considered by [the Court of Appeals on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Furthermore, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Bousley*, 523 U.S. at 622).

Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. An ineffective assistance of counsel claim requires that a petitioner satisfy the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (applying *Strickland*'s two-prong test). A petitioner claiming "ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Id.* at 476–77 (quoting *Strickland*, 466 U.S. at 688, 694). The first prong, also called the "performance" prong, requires a petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*,

466 U.S. at 687. When courts undertake review of this first prong, they adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. As regards the second prong, also called the "prejudice" prong, a petitioner must show that his counsel's errors deprived him of a fair trial. *Id.* To establish this level of prejudice, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner must meet both prongs of the *Strickland* test to be entitled to relief. *Id.* at 687.

## ANALYSIS

Mr. Sary raises three arguments to vacate or modify his sentence under 28 U.S.C. § 2255. (ECF No. 111.) First, he claims ineffective assistance of counsel for failing to (a) explain the implications of the factual stipulation and plea agreement; (b) present mitigating evidence at sentencing; and (c) argue for a downward variance at sentencing. (*Id.*) Second, he claims violation of his due process rights under the Fifth Amendment to the United States Constitution. (*Id.*) Third, and finally, he claims improper restitution. (*Id.*) Relief is not merited under any of these arguments, and Mr. Sary's § 2255 motion is denied.

### I.   Ineffective Assistance of Counsel

Mr. Sary's first argument for relief under § 2255 is that his counsel was constitutionally ineffective. (ECF No. 111 at 2–3.) He alleges three separate instances of ineffective assistance: (1) counsel "failed to explain the implications of the factual stipulation and plea agreement, particularly the binding effect of stipulating" to the facts in the plea agreement; (2) counsel failed to "file a mitigation memorandum, present character evidence, or rebut inflammatory

7

allegations in the government's sentencing memorandum"; and (3) counsel did "not argue for a downward variance despite the Petitioner's Criminal History Category I and eligibility for the [United States Sentencing Commission's Guidelines] § 4C1.1 reduction for zero point offenders." (*Id.*)

As noted above, for a petitioner to succeed in demonstrating ineffective assistance of counsel under *Strickland*, he must show both "(1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Flores-Ortega*, 528 U.S. at 476–77 (quoting *Strickland*, 466 U.S. at 688, 694).

The Sixth Amendment guarantees a criminal defendant's right to receive representation that falls "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. Counsel's performance is evaluated from the attorney's perspective at the time of trial. *Id.* at 689. Courts must be "highly deferential" to the decisions of defense attorneys. *Id.* at 689. Accordingly, there is a strong presumption that counsel's conduct falls within the range of reasonable assistance. *Id.* at 689. The petitioner bears the burden of "overcome[ing] the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Stated simply, *Strickland* sets a "high bar." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

*Stickland*'s second prong requires a showing of actual prejudice. 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *United States v. Morrison*, 449 U.S. 361, 364–65 (1981). Demonstrating prejudice requires the petitioner to show "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result

of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When applied to guilty pleas, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla*, 559 U.S. at 371 n.12.

The arguments advanced in Mr. Sary's § 2255 motion do not satisfy either *Strickland* prong: he cannot show that his counsel's performance was objectively unreasonable, nor that any alleged deficiencies prejudiced him. First, Mr. Sary's claim of ineffective assistance of counsel for "failure to explain the implications of the factual stipulation and plea agreement, particularly the binding effect of stipulating to an aggregate $17.9 million loss" is insufficient to show either deficient performance or prejudice. (ECF No. 118 at 19.) In this case, deficient performance is only satisfied if Mr. Sary can demonstrate that his attorney's conduct was outside "the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. Since Mr. Sary had an attorney for the entirety of the plea process, the Court's inquiry is "ordinarily confined to whether the underlying plea was both counseled and voluntary," representing a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Broce*, 488 U.S. 563, 569 (1989); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

A guilty plea "[is] a grave and solemn act" that is "accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). Once entered, there is "a strong presumption that the plea is final and binding," *United States v. Lambey*, 974 F.3d 1389, 1394 (4th Cir. 1992), and must be granted "a presumption of truthfulness," *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003). If the defendant is "fully aware of the direct consequences," and not "induced by threats," his guilty plea must stand. *Brady*, 397 U.S. at 755. Therefore, a

9

defendant's statements made at a plea hearing are "strong evidence of the voluntariness of his plea." *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). Moreover, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

Mr. Sary's claim that his counsel failed to explain the implications of the factual stipulation and plea agreement, including the enhancement based on the loss, cannot be reconciled with his acknowledgements during the Rule 11 proceeding. (ECF No. 118 at 19.) In accordance with Rule 11(b)(1), the Court advised Mr. Sary of the binding implication of the plea, including (1) his waiver of trial rights by pleading guilty (*id.* at 34); (2) the nature of the charges to which he pleaded guilty (*id.* at 34–35); (3) the maximum penalties and mandatory minimum penalties (*id.* at 22); (4) and his waiver of the appellate rights detailed in the plea agreement (*id.* at 29.)

Additionally, pursuant to Rule 11(b)(2), Mr. Sary confirmed his desire to plead guilty and that he was neither forced nor threatened into accepting the plea. (*Id.* at 18.) Based on Mr. Sary's acknowledgements in the plea colloquy, the Court determined that Mr. Sary had entered his plea knowingly and voluntarily. (*Id.* at 44–45.) He made no indication that he did not understand the provisions of his plea agreement at the hearing. (*Id.*) Since the Court found

that Mr. Sary's guilty plea was both "counseled and voluntary," *Broce*, 488 U.S. at 569, his deficient-performance claim fails *Strickland*'s first prong.[6]

Mr. Sary's second ineffective-assistance-of-counsel claim alleges that his counsel failed to "file a mitigation memorandum, present character evidence, or rebut inflammatory allegations in the government's sentencing memorandum." (ECF No. 111 at 2–3.) This claim similarly fails *Strickland*'s first prong. The record indicates that Mr. Sary's counsel zealously advocated on his behalf by filing a sentence memorandum and multiple character letters. (ECF Nos. 78, 78-1 to 78-7.) Moreover, Mr. Sary's counsel enlisted Mr. Sary's wife, his sons, and a close family friend to speak on behalf of him at sentencing. (ECF 118 at 20.)[7] Accordingly, Mr. Sary's deficiency of performance claim fails.

Mr. Sary's third ineffective-assistance-of-counsel claim alleges that his counsel was constitutionally deficient for failing to "argue for a downward variance at sentencing." (ECF

---

[6] The Court does not need to analyze *Strickland*'s "prejudice" prong, since Mr. Sary's claim fails under the first prong. *See Strickland*, 466 U.S. 668, 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one").

[7] In *Porter v. McCollum*, 558 U.S. 30 (2009), the Court found that counsel's decision not to investigate new evidence that came to light regarding defendant's background did "not reflect reasonable professional judgment." *Id.* at 40. In *Porter*, defendant brought an ineffective assistance of counsel claim for neglecting to present mitigating evidence demonstrating that he was mentally unhealthy. *Id.* at 32. The Court remanded the case, *id.* at 44, holding that, since counsel did not interview the members of defendant's family, counsel had failed his "obligation to conduct a thorough investigation of defendant's background." *Id.* at 39 (quoting *Williams v. Taylor*, 529 U.S. 362, 396 (2000)). Unlike in *Porter*, Mr. Sary cannot establish that his counsel's performance was deficient. Not only did Mr. Sary's counsel interview his family members, but he filed multiple character letters on Mr. Sary's behalf and instructed his family to speak at sentencing. (ECF 118 at 20.)

No. 111.) The record makes abundantly clear that Mr. Sary's counsel did indeed seek a downward variance to his sentence at the sentencing hearing,[8] and so this argument fails.

In Reply (ECF No. 119), Mr. Sary alleges that the Rule 11 colloquy at the plea hearing does not cure what he alleges to have been constitutionally deficient advice given by his counsel before the plea. (*Id.* at 4.) Just as above, the record clearly indicates that Mr. Sary's on-the-record statements undercut this argument. During the guilty pea hearing, the Court asked Mr. Sary to confirm that he was satisfied with his representation, and he affirmed that there was nothing that he asked his counsel for that she did not do (ECF No. 118-1 at 15.)

In sum, all three of Mr. Sary's ineffective assistance of counsel claims fail to overcome *Strickland*'s first prong, and so relief is not warranted.

## II.   Violation of Due Process and Improper Restitution

Mr. Sary makes two additional arguments for relief under § 2255: (1) violation of due process; and (2) improper restitution. (ECF No. 111.) These claims are procedurally defaulted because they were not raised on direct appeal. He cannot overcome this procedural default because he cannot demonstrate "cause and actual prejudice," nor "actual innocence." (ECF No. 111 at 1–2.)

---

[8] The Court determined that the United States Sentencing Commission's Guidelines sentencing range was 108 months to 135 months' imprisonment. (ECF 118 at 20.) The parties stipulated to a sentence between sixty and 114 months. (ECF No. 66 at 6.) At the sentencing hearing, Mr. Sary's counsel argued for a term of sixty months, the low end of the parties' stipulated range and forty-eight months—four years—below the Sentencing Commission's Guidelines range. (ECF No. 118 at 20.)

"[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice, *Massaro v. United States*, 538 U.S. 500, 504 (2003), or actual innocence, *Murray v. Carrier*, 477 U.S. 478, 496 (1986).[9]

To satisfy the cause and prejudice standard, "a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). To demonstrate actual innocence, "[the] petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

First, with respect to cause and prejudice, a petitioner who has signed a plea agreement has waived his right to a direct appeal. *Broce*, 488 U.S. at 568. Thus, a "plea agreement that prevents a defendant from appealing is not sufficient cause for his procedural default." *Dorsett v. United States*, No. GLR-07-445, 2017 WL 2335603, at *1 (D. Md. May 30, 2017). A petitioner is "precluded from raising [on collateral review] claims that are the sort that could have been raised on appeal." *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009). As such, "[t]he existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).

The novelty of a claim must demonstrate that "its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). Mr. Sary

---

[9] "[In] an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496.

13

cannot demonstrate that his claims satisfy this standard. He asserts that his Fifth Amendment right to due process was violated when the "court relied heavily on unchallenged factual allegations from the government." (ECF No. 111 at 3.) Moreover, Mr. Sary contends that "the restitution order of $17,901,279.87 was imposed without proper apportionment under 18 U.S.C § 3664(h) by being held jointly and severally liable for the entire amount." (*Id.* at 4.) However, over a year before his sentencing hearing, Mr. Sary stipulated to the government's facts, including the total fraudulent loan disbursement amount of $17,901,279.87. (ECF No. 66-1 at 1–2.) It cannot be said that Mr. Sary's claims were novel enough "as to not be reasonably available to counsel during the time in which any appeal could be filed." (ECF No. 118 at 24.) Additionally, since there has been no prior denial of ineffective assistance of counsel, Mr. Sary cannot demonstrate cause to overcome a procedural default.[10]

Second, as regards actual innocence, Mr. Sary cannot demonstrate actual innocence to overcome the procedural default. Demonstrating actual innocence requires producing "new evidence" that "may consist of exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Webb-El v. Stewart*, No. PWG-13-2785, 2014 WL 4662609, at *6 (D. Md. Sept. 16, 2014). However, Mr. Sary has not produced any new evidence to establish actual innocence. Therefore, Mr. Sary cannot overcome the procedural default on his due process and improper restitution claims for lack of showing cause and prejudice, nor actual innocence, and his claims are denied.

---

[10] The Court does not need to analyze "prejudice," since Mr. Sary's claim fails under "cause." *See Frady*, 456 U.S. at 168 ("The cause and prejudice standard requires a showing of both cause and prejudice").

14

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this fifth day of February, 2026, that: Defendant's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 111) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant. "A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463, U.S. 880, 893 n.4 (1983)). Because Defendant's motions provide no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is DENIED.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge